IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:18-cr-00459-M |
| | § | |
| KAYODE GBOLOGADE OYEDEPO, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS EVIDENCE**

Before the Court is Defendant's Second Motion to Suppress Evidence. (ECF No. 62). The Court conducted an evidentiary hearing on November 22, 2019. (ECF No. 65). For the reasons stated below, the Motion is **DENIED**.

**I.      Factual and Procedural Background**

On November 4, 2017, around 2:15 a.m., Sergeant Russell of the Highland Park Department of Public Safety ("Highland Park DPS") observed a vehicle that she thought "did not have a functioning headlight on the passenger side," so she conducted a traffic stop. (ECF No. 68-1 at 7, 16–17, 44, 88). Specifically, Russell saw two lights illuminated on the front of the vehicle, but stated that "one [was] brighter than the other." (*Id.* at 15; *see also id.* at 13, 42–44). Shortly thereafter, others arrived on the scene, including Officers Whaley and Carter. (*Id.* at 15–16, 98). Defendant did not have a valid driver's license, and was arrested. (*Id.* at 9, 18, 23–25, 73; *see also* ECF No. 69-1 at 238–39).

Whenever the driver of a vehicle is arrested, Highland Park DPS policy requires the vehicle to be inventoried, which includes completing a Vehicle Inventory Report ("VIR") and

"[p]erform[ing] a thorough inventory of the contents of the vehicle" on the scene. (*Id.* at 235–36, 238). The contents of any locked compartments are to be included in the inventory, if a key is available to unlock them. (*Id.* at 237).

During the inventory, Whaley used a key to open the glove box and found a firearm inside. (*See* ECF No. 68-1 at 32, 40–41, 46, 54, 56). Officers did not confirm at the scene that the Defendant was a convicted felon. (*Id.* at 33, 64). Defendant argues that both the traffic stop and inventory are invalid, and brings this Motion to suppress the use of the firearm in this case. (ECF Nos. 62, 68).

## II. Legal Standard

### A. "Reasonable Suspicion" for Traffic Stops

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred . . . [e]ven if a traffic violation has not been committed." *United States v. Spears*, 636 F. App'x 893, 898 (5th Cir. 2016) (citing *United States v. Lopez–Moreno,* 420 F.3d 420, 430 (5th Cir. 2005); *United States v. Zavala,* 541 F.3d 562, 574 (5th Cir. 2008)); *see also Heien v. North Carolina,* 574 U.S. 54, 60–61 (2014). "[E]vidence is not to be suppressed . . . where it is discovered by officers in the course of actions that are taken in good []faith and in the reasonable, though mistaken, belief that they are authorized." *United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999); *see also United States v. Rosales-Giron*, 592 F. App'x 246, 252 (5th Cir. 2014); *Heien*, 574 U.S. at 54. "[A]n officer's subjective motivations are irrelevant" to determining reasonable suspicion. *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005); *see also Heien*, 574 U.S. at 66.

### B. The Inventory Exception to the Warrant Requirement

An inventory is a "well-defined exception to the warrant requirement," so long as it is conducted according to standard procedures. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *see also United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012). "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant [to a motion to suppress] and hence not subject to inquiry." *United States v. Causey*, 834 F.2d 1179, 1184–85 (5th Cir. 1987) (noting that, "Again and again . . . the [Supreme] Court has told us that where police officers are objectively doing what they are legally authorized to do . . . the results of their investigations are not to be called into question on the basis of any subjective intent with which they acted"); *see also McKinnon*, 681 F.3d at 210 (holding that although the officer "may have had an ulterior motive to search the vehicle, the inventory search was reasonable, and thus, valid . . . .").

## III. Analysis

As a preliminary matter, because Defendant states that this Motion pertains only to Count Two, Felon in Possession of a Firearm, and Count Three, Possession of a Stolen Firearm, this Order focuses only on the admissibility of the firearm found in the glove box. (*See* ECF Nos. 62 at 1, 57, 68); *see also Keaton v. United States*, No. 1:12-cv-13, 2016 WL 7235712, at *3 (E.D. Tex. Nov. 7, 2016) (declining to consider officers' conduct regarding two items found during a traffic stop, because neither item was used against Defendant).

### A. The Traffic Stop Was Valid

Defendant argues that the traffic stop was invalid because he was not driving with a defective headlight. (ECF Nos. 68-1 at 94, 68 at 4). Defendant cites *United States v. Raney*, which held, "If the alleged traffic violation forming the basis of the stop was not a violation of

state law, there is no objective basis for justifying the stop." (ECF No. 68 at 3 (citing *United States v. Raney*, 633 F.3d 385, 390 (5th Cir. 2011))). The *Raney* court noted that this would apply when "the reason for the stop was not actually a violation." *Id*. (citation omitted). In *Raney*, for instance, the appeals court held that the district court erred when it found that "driving in the wrong lane of traffic was a per se violation," because the statute listed exceptions to this prohibition. *Id.*

However, when the reason for the stop *would* violate state law, "[r]outine traffic stops can [] be justified by the reasonable suspicion of a violation . . . ." *See Woodard v. Davis*, No. 3:16-cv-2974-C-BK, 2018 WL 1757657, at *4 (N.D. Tex. Mar. 21, 2018) (citing *United States v. Brigham,* 382 F.3d 500, 506 (5th Cir. 2004)); *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Officers need only "a particularized and objective basis" for suspecting the person was breaking the law. *Id.*

Here, Russell stopped Defendant for violating Texas Transportation Code § 547.302(c), which requires "[a]t least one lighted lamp . . . on each side of the front of a motor vehicle." (*See* ECF No. 68-1 at 94, 22–23). A "lighted lamp" is defined as one "required by this chapter to be on the vehicle." Tex. Transp. Code § 547.302(a). The chapter requires a vehicle's headlamp on each side to "be mounted at a height from 24 to 54 inches." *Id.* §§ 547.321 (b), (c).

After her in-court viewing of video of the stop from her dash camera, Russell testified that she "observed that [the] vehicle in front of me [] did not have a functioning headlight on the passenger side." (ECF No. 68-1 at 7). She stated that the light illuminated on the passenger side was not the correct light because "it was the lower light." (*Id.* at 28). However, once she viewed video from her body camera in court, she responded to a question about the height of the lights by acknowledging, "I'm looking at this, now, I—I was wrong," and observed that the lower light

4

"[was] not working on there, on the passenger side. You can see it's working on the driver's side." (*Id.* at 42–43).

Defendant's counsel agreed with the Court's observation of the "quite obvious difference in the strength of the lights as they were approaching." (*Id*. at 95). The Court elaborated, "There's something up with the lights," because "it was quite clear that the lamp strength on these two lights is radically different." (*See id.* at 94–95, 98, 105–106). Defendant now asserts that the difference in brightness was because he "had both his headlights on, but he *additionally* had his high beam light on the driver's side, but not on the passenger side." (ECF No. 72 at 7) (emphasis added).

The absence of a high beam on one side and possible defect in the condition of one lower light likely explains the difference in perceived brightness of the two lights. The condition of the lights, which the Court observed in the video, gave Russell a "particularized and objective basis" at the time of the stop for assuming that the headlight on the passenger side was out. *See Heien*, 574 U.S. at 60. Her later correction came only upon a second in-court viewing of the incident on her body camera in response to a specific question about the height of the lights. That testimony does not undercut the reasonableness of her assumption at the time of the stop. *See United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999). Thus, regardless of whether or not Defendant was actually violating the statute on headlights, Russell "reasonably believe[d]" at the time of the stop that the difference in brightness was due to a defective headlight, which is a traffic violation. *See United States v. Rosales-Giron*, 592 F. App'x 246, 252 (5th Cir. 2014); *see also United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999); *Heien*, 574 U.S. at 66. Thus, the traffic stop was valid, and the firearm will not be suppressed on this ground.

5

**B.     The Inventory of Defendant's Vehicle Was Valid**

Defendant argues that the officers did not comply with the policy of Highland Park DPS for inventorying vehicles, and that the inventory was thus invalid. Because the officers' subjective motives are irrelevant, the Court will not consider any statements by officers that Defendant argues reveal their intent to conduct an impermissible evidentiary search. *See United States v. McKinnon*, 681 F.3d 203, 210 (5th Cir. 2012); (*see also* ECF No. 68 at 7–8). The Defendant was arrested, so the officers were required to conduct an inventory.

**1. Involvement of Multiple Officers and Timing of VIR Completion**

Defendant argues that Highland Park DPS policy was not followed because multiple officers assisted in the inventory and it was not recorded as it was being conducted. (ECF No. 68 at 7–8). Defendant focuses on the following facts. Russell told Whaley that Carter would "do the inventory," but Whaley still inventoried the vehicle. (ECF No. 68-1 at 20, 25, 60). After Whaley finished, Carter stated that she still had to do the inventory. (*See id.* at 29, 41, 51–57, 59, 70). Carter then recorded the inventory on the Vehicle Inventory Report ("VIR"). (*See id.* at 35, 38, 62).

Regarding the involvement of multiple officers, Russell testified that multiple officers can be involved in conducting an inventory, but only one VIR is required. (*See* ECF No. 68-1 at 46, 62). This testimony was unrefuted by anyone. The Highland Park DPS policy directs "department *members* impounding a vehicle [to] complete a [VIR]," thus contemplating the involvement of multiple officers, since impounding requires an inventory. (ECF 69-1 at 235) (emphasis added). The policy does not address how many officials can be involved. Thus, the involvement of multiple officers in the inventory cannot support a suppression for failure to comply with Highland Park DPS policy.

Highland Park DPS policy separates "complet[ing] a VIR" from the actions that must be "completed at the scene," like "[p]erform[ing] a thorough inventory of the contents of the vehicle," thus implying that the two need not occur simultaneously. (*Id.*). Russell testified that it is "standard practice" to complete the VIR "sometime before the tow truck gets there to take the vehicle." (ECF No. 68-1 at 30). This testimony was also unrefuted. Thus, the completion of the VIR after the inventory was conducted satisfied Highland Park DPS policy, and therefore the firearm cannot be suppressed on this ground.

### 2. Determining Whether the Firearm Was Stolen

Defendant argues that the officers did not follow Highland Park DPS policy when they checked whether the firearm was stolen. (ECF No. 72 at 9, 68-1 at 108). However, in detailing the proper storage of "property taken for safekeeping under authority of a law," the policy requires that "[g]uns and other items with serial numbers are *rechecked* for stolen," thereby suggesting that standard procedure includes checking a firearm's status at the scene as well as when it is stored. (ECF No. 69-3 at 1–2, 5–6) (emphasis added); *see also, e.g., United States v. Shaw*, No. 3:12-cr-146-D, 2013 WL 66055, at *2 (N.D. Tex. Jan. 7, 2013), *aff'd*, 578 F. App'x 363 (5th Cir. 2014) (denying a motion to suppress a firearm where the officer checked whether it was stolen during the inventory). Thus, officers complied with Highland Park DPS policy by checking to determine if the firearm was stolen, and therefore the firearm cannot be suppressed on this ground.

### C. Officers Did Not Need to Confirm Defendant Was a Felon During Inventory

Defendant's counsel argued at the November 22, 2019, hearing that officers erred in not confirming whether Defendant was a felon during the inventory. (*See* ECF No. 68-1 at 108). The officers were not required to determine Defendant's status as a felon during the inventory for him to be later charged as one. *See, e.g., United States v. Jerry*, No. 18-cr-00331, 2019 WL 3228847, at *2 (W.D. La. June 18, 2019) (denying a motion to suppress related to a charge of felon in possession of a firearm where "officers did not know that the defendants were convicted felons at the time of the car search, but they were in the process of obtaining that information"). Therefore, the firearm cannot be suppressed on this ground.

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

**SO ORDERED**.

February 18, 2020.

_____
BARBARA M. G. LYNN
CHIEF JUDGE